**PHILADELPHIA GAS WORKS,**
Petitioner

v.

**WORKERS' COMPENSATION
APPEAL BOARD (AMODEI),**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 12, 2008.

Decided Feb. 4, 2009.

Jeffrey L. Zeitz, Philadelphia, for petitioner.

Daniel J. Siegel, Havertown, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge [1], COHN JUBELIRER, Judge, and LEAVITT, Judge.

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

OPINION BY Judge FRIEDMAN.

Philadelphia Gas Works (PGW) petitions for review of the January 25, 2008, order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of a workers' compensation judge (WCJ) to grant the Petition to Review Compensation Benefits Offset (Review Offset Petition) filed by John Amodei (Claimant). We also affirm.

The facts of this case are not in dispute. Pursuant to an Agreement of Compensation, Claimant has been receiving workers' compensation benefits for a March 26, 1997, work-related injury at the rate of $542.00 per week. (R.R. at 1a–2a.) Claimant retired from PGW and began receiving pension benefits; PGW fully funds the pension plan in question. (WCJ's Findings of Fact, No. 4.)

On January 29, 2001, pursuant to section 204(a) of the Workers' Compensation Act (Act),[2] PGW issued a Notice of Compensation Benefit Offset (NCBO), notifying Claimant that PGW would be taking a weekly offset against Claimant's workers' compensation benefits in the amount of $264.10, representing the net amount of pension benefits received by Claimant. (WCJ's Findings of Fact, Nos. 1, 5; R.R. at 19a–20a.) On April 27, 2006, PGW issued a second NCBO, setting forth a weekly offset of $334.83, based upon the gross amount of Claimant's pension bene-

fits.[3] (WCJ's Findings of Fact, No. 2; R.R. at 21a–22a.)

On May 15, 2006, Claimant filed his Review Offset Petition challenging PGW's second NCBO and alleging that PGW was entitled to a credit only for the net amount of pension benefits received by Claimant. (WCJ's Findings of Fact, No. 3; R.R. at 1a–3a.) PGW filed a timely answer and maintained that its gross pension offset accorded with section 204(a) of the Act and *Steinmetz v. Workers' Compensation Appeal Board (Cooper Power Systems)*, 858 A.2d 182 (Pa.Cmwlth.2004). (R.R. at 4a–5a.) The matter was assigned to a WCJ, who determined that PGW properly calculated the offset in its first NCBO by utilizing the net amount of Claimant's pension benefits. (WCJ's Findings of Fact, No. 5; WCJ's Conclusions of Law, No. 2.) Accordingly, the WCJ granted Claimant's Review Offset Petition, set aside PGW's April 27, 2006, NCBO and reinstated the January 29, 2001, NCBO. (R.R. at 29a.)

PGW appealed to the WCAB, which affirmed in a decision and order dated January 25, 2008. (R.R. at 32a–37a.) In doing so, the WCAB relied on the regulations promulgated by the Bureau of Workers' Compensation (Bureau) to implement section 204(a) of the Act.[4] Specifically, the WCAB based its decision on the regulation at 34 Pa.Code § 123.8(a), which directs that workers' compensation benefits "shall

---

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71(a).

3. The WCJ makes what appears to be a typographical error in Findings of Fact, No. 4, by stating that $334.83 represents Claimant's *net* weekly pension benefit rather than his gross pension amount.

4. *The subchapter dealing with offsets under section 204(a) of the Act provides:*

   123.1 Purpose

   This subchapter interprets the provisions of the act which authorize the offset of work-

ers' compensation benefits by amounts received in unemployment compensation, Social Security (old age), severance and pension benefits, subsequent to the work-related injury. Offsets shall be dollar-for-dollar and calculated as set forth in §§ 123.4–123.11. Offsets in excess of the weekly workers' compensation rate shall accumulate as a credit toward the future payment of workers' compensation benefits.

34 Pa.Code § 123.1.

be offset by the *net* amount an employe receives in pension benefits." (Emphasis added.)

On appeal to this court,[5] PGW argues that the WCAB was required to follow controlling precedent in *Steinmetz* and *Ferrero v. Workers' Compensation Appeal Board (CH & D Enterprises)*, 706 A.2d 1278 (Pa.Cmwlth.1998), *appeal dismissed*, 556 Pa. 97, 726 A.2d 1058 (1999), both of which held that an employer's offsets under section 204(a) of the Act are to be based on the gross amount of benefits received by the claimant. PGW contends that the WCAB's contrary decision, based on the regulation at 34 Pa.Code § 123.8(a), was inconsistent with section 204(a) of the Act in that it inserted words into the statute that the legislature failed to supply as an indication of its intent. We disagree.

In relevant part, section 204(a) of the Act provides as follows:

> [I]f the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the [workers' compensation] award made.... Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act shall also be credited against the amount of the [workers' compensation] payments made.... The severance benefits paid by the employer directly liable for the payment of compensation and *the benefits from a pension plan* to the extent funded by the employer directly liable for the payment of compensation *which are received by an employe shall also be*

> *credited against the amount of the [workers' compensation] award ....*

77 P.S. § 71(a) (emphasis added, citation omitted).

The statutory language permitting an employer to offset workers' compensation paid to an employee by the amount of pension benefits the employee "received" does not specify whether the credits allowed are to be calculated on the gross or net amount received by the employee. However, pursuant to legislative directive, this information is supplied by regulation.[6] With respect to pension benefits, the regulation provides as follows:

> Workers' compensation benefits otherwise payable shall be offset by the *net* amount an employe receives in pension benefits to the extent funded by the employer directly liable for the payment of workers' compensation.

34 Pa.Code § 123.8(a) (emphasis added).

PGW relies on *Steinmetz* and *Ferrero*, wherein this court held that, under section 204(a) of the Act, employers are entitled to a credit for the gross amount of severance benefits and unemployment compensation, respectively, received by an employee. The explanation in *Ferrero*, which also was quoted and adopted as the sole rationale in *Steinmetz*, states:

> As noted by the [WCAB], in the case of unemployment compensation benefits, the "amount so received" is the gross amount. Because no taxes are withheld from UC benefits, Ferraro received the gross amount and had the gross amount available for his use even though it was later taxed.

---

**5.** Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with law or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**6.** The legislature directed the Department to issue appropriate rules and regulations for the enforcement of section 204(a) of the Act. Section 204(d) of the Act, 77 P.S. § 71(d).

We agree with the [WCAB's] conclusion that applying the offset to the net amount of UC benefits would create unnecessary administrative problems. The UC benefits are not taxed until year end, and the amount of tax will vary depending on the employee's tax bracket, deductions, and filing status. Furthermore, as we have noted in the context of subrogation, that workers' compensation benefits are exempt from income taxation and UC benefits are not so exempt is a matter of federal policy. Our General Assembly is presumably aware of the taxability of these benefits, and it did not specify offset of the "net" amount of UC benefits.

If Ferrero had not received the unemployment compensation, he would now be entitled to the full amount of the workers' compensation benefits awarded. Instead, for some reason not of record, Ferrero applied for, and received, unemployment compensation benefits during the same period for which he now asserts that he was totally disabled and unable to perform even his light-duty work. The 1996 amendment to Section 204(a) of the Act was aimed at preventing just this sort of double recovery.[7]

7. In *Ferrero*, the court incorrectly characterized an offset based on net benefits as a double recovery. However, read in context, it appears that the statement regarding double recovery was not intended to apply generally to employees receiving both workers' compensation and other benefits; instead, it was based on the specific facts in *Ferrero*.

8. The WCAB only addressed the regulation pertaining to the offset of pension benefits; however, the Bureau's regulations are consistent in dealing with the four types of benefits subject to offset. "Workers' compensation benefits *otherwise payable shall be offset by* the *net* amount an employe receives in [unemployment compensation] benefits subsequent to the work-related injury." 34 Pa.Code

*Ferrero,* 706 A.2d at 1279 (footnote omitted).

Like the WCAB here, we cannot agree that *Ferrero* and *Steinmetz* are controlling or that either case allows us to disregard the Bureau's regulations.[8] (WCAB's op. at 4.) Critically, we note that none of the parties in these cases ever raised the issue of the applicable regulations, and, therefore, the court's ruling never considered the mandate of these provisions. In fact, as the WCAB observed, the regulations had been promulgated less than two weeks prior to our ruling in *Ferrero*. (WCAB's op. at 4, n. 4.)

With respect to the court's concern that applying the offset to the net amount of benefits would result in administrative difficulties, we note that the regulations expressly provide, in the alternative, that an employer may calculate the offset based on the gross amount of the other benefit received by the employee, *subject to a correction once the employee notifies the insurer that he has paid the required tax.* Specifically, 34 Pa.Code § 123.4(f) (emphasis added) provides:

123.4 Application of the offset generally.

§ 123.6(a) (emphasis added). "Workers' compensation benefits otherwise payable shall be offset by 50% of the *net* amount received in Social Security (old age) benefits." 34 Pa.Code § 123.7(a) (emphasis added). "Workers' compensation benefits otherwise payable shall be offset by amounts an employee receives in severance benefits subsequent to the work-related injury." 34 Pa. Code § 123.11(a). "The *net* amount of any severance benefits shall offset workers' compensation benefits on a weekly basis except as provided in subsections (c) [lump sum payment] and (d) [payment in tangible property]." 34 Pa.Code § 123.11(b) (emphasis added).

. . .

(f) When Federal, State or local taxes are paid with respect to amounts an employee receives in unemployment compensation, Social Security (old age), severance or pension benefits, *the insurer shall repay the employee for amounts previously offset, and paid in taxes,* from workers' compensation benefits, *when the offset was calculated on the pretax amount of the benefit received.* To request repayment for amounts previously offset and paid in taxes, the employee shall notify the insurer in writing of the amounts paid in taxes previously included in the offset.

Thus, the Bureau's regulations provide an administrative procedure where an employer exercises this option. In either event, the employer is entitled to a credit only for the net amount of unemployment compensation, Social Security (old age), severance or pension benefits that the employee receives. 34 Pa.Code §§ 123.6(a), 123.7(a); 123.8(a); 123.11(b).

Although the legislature did not specify whether an offset should be based on the "net" or "gross" amount of these benefits, we observe that allowing a credit for the gross amount of other benefits results in a loss of workers' compensation benefits to which a claimant is statutorily entitled. In view of an injured employee's entitlement to receive workers' compensation without any tax reduction, we will not rely on the absence of specific direction to conclude that the language in section 204(a) of the Act, granting employers a credit for certain taxable benefits received by the employee during a period of work-related disability, reflects a legislative intent to reduce the employee's entitlement to workers' compensation *beyond the post-*

*tax amount* of those other benefits *actually received by the employee and available for his or her use.* Indeed, in providing background for its regulations, the Bureau states, "[o]n June 24, 1996, Governor Tom Ridge signed into law Act 57, which substantially amended the [A]ct. The amendments are intended to combat the rising costs of workers' compensation in this Commonwealth *while protecting the right of employes to be adequately compensated for their work-related injuries."* 28 Pa. B. 329 (Jan. 17, 1998). (Emphasis added.)

Unless the court determines that a regulation is clearly erroneous or violative of legislative intent, the interpretive regulation adopted by the administrative agency will be accorded deference. *Rump v. Aetna Casualty and Surety Company,* 551 Pa. 339, 710 A.2d 1093 (1998). We conclude that the regulations implementing section 204(a) of the Act do not conflict with the statutory language at issue, and, simultaneously, they further both the intent underlying the 1996 amendments to section 204(a) of the Act and the remedial purpose of the Act.[9]

Accordingly, we affirm.

President Judge LEADBETTER concurs in the result only.

### ORDER

AND NOW, this 4th day of February, 2009, the order of the Workers' Compensation Appeal Board, dated January 25, 2008, is hereby affirmed.

CONCURRING OPINION BY Judge COHN JUBELIRER.

I join the majority opinion and agree with its conclusion that the Bureau of

---

9. Like the WCAB, we also are guided by the principle that borderline interpretations of the Act are to be construed in the injured party's favor. *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524 (2003).

Workers' Compensation's (Bureau) regulation, 34 Pa.Code § 123.8(a), is consistent with the portion of Section 204(a) of the Workers' Compensation Act (Act)[1] that relates to calculating offsets from pension benefits, and is also consistent with the intent behind the Act and its amendments. The majority's well-reasoned analysis convincingly explains why we should defer to the Bureau's regulations regarding the calculation of offsets based on the net pension amount. However, I write separately to make explicit that this Court, sitting en banc in this case, is effectively overruling our panel decision in *Steinmetz v. Workers' Compensation Appeal Board (Cooper Power Systems)*, 858 A.2d 182 (Pa.Cmwlth. 2004).

In *Steinmetz*, we concluded that where a claimant receives severance benefits, the gross amount of severance benefits should be used to calculate the offset. The structure of Section 204(a) of the Act shows a clear intent by the General Assembly to treat severance benefits and pension benefits similarly in calculating workers' compensation benefit offsets by having both pension and severance benefits referenced in the same sentence. *See* 77 P.S. § 71(a) (providing that "[t]he severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the [workers' compensation] award"). Since this Court, in *Steinmetz*, concluded that the gross amount of severance benefits should be used to calculate the offset, it would necessarily follow that, in this case, the gross pension amount would similarly be used to calculate the offset. However, as indicated in the present majority opinion, in rendering our decision in *Steinmetz* we did not address any regulatory provisions.

In contrast, in this case we do address a regulatory provision and, in fact, defer to the Bureau's regulation at 34 Pa.Code § 123.8(a), which provides that the net amount of pension benefits should be used to calculate the offset. Given that the structure of the statutory language shows an intent to treat severance and pension benefits similarly, and given that this Court has now addressed the appropriate regulations and has done so en banc, it necessarily follows that today's opinion effectively requires the *net* amount of severance benefits to also be used to calculate the appropriate offset. This point is underscored by the majority's reference to 34 Pa.Code § 123.11(b), which, similar to 34 Pa.Code § 123.8(a), provides that the net amount of severance benefits be used to calculate the applicable offset. *Philadelphia Gas Works v. Workers' Compensation Appeal Board (Amodei)*, 964 A.2d 963, 966 n. 7 (Pa.Cmwlth.2009).

Although our holding in this case is limited to pension benefits, the rationale in it charts an unmistakable course for future offset cases that would have relied on *Steinmetz*.

President Judge LEADBETTER and Judge McGINLEY join in this concurring opinion.

CONCURRING OPINION BY Judge LEAVITT.

I concur in the majority's holding that an employer's credit against the amount owed to an employee for workers' compensation disability is established by the after-tax amount of unemployment compensa-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71(a).

tion, Social Security (old age), severance or pension benefits actually received by the claimant. I write separately to address the mechanics of implementing the majority's holding.

Claimants are not entitled to double recovery for their loss in wages. In 1996, the General Assembly enacted amendments to the Workers' Compensation Act,[1] to prevent double recovery as a way to contain the cost of workers' compensation insurance. Accordingly, the legislature established that a claimant's disability compensation for a work-related injury must be reduced by payments the claimant receives in the form of Social Security, unemployment and an employer-paid pension. Section 204(a) of the Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 71(a).[2]

On the other hand, these reductions should not have the effect of leaving the claimant with less than 100 percent of his disability compensation award. Disability compensation is not taxable as earned income, but this is not necessarily the case with respect to Social Security, unemployment or pension payments. The majority correctly holds that offsets must be calculated by considering their after-tax effect on a particular claimant's compensation. This is why the employer's offset credit cannot exceed the "net" amount actually received by the claimant. However, this does not mean that the employer must estimate an individual's tax liability when calculating the offset credit. This is an administrative burden neither contemplated by nor expressly imposed by the Act.

The regulations of the Department of Labor and Industry address this problem. They provide that an employee may "request repayment for amounts *previously offset* and paid in taxes ... [by] notify[ing] the insurer in writing of the amounts paid in taxes previously included in the offset," *"when the offset was calculated on the pretax amount of the benefit received."* 34 Pa.Code § 123.4(f) (emphasis added).[3]

---

1. Act of June 24, 1996, P.L. 350 (Act No. 1996–57).

2. It states, in relevant part, as follows:

   Provided, however, That if the employe receives [1] *unemployment compensation* benefits, such amount or amounts so received *shall be credited as against the amount of the award* made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307.[2] *Fifty per centum of the benefits* commonly characterized as "old age" benefits *under the Social Security Act* (49 Stat. 620, 42 U.S.C. § 301 et seq.) *shall also be credited* against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. [3] *The severance* benefits paid by the employer directly liable for the payment of compensation and the *benefits from a pension plan* to the extent funded by the employer directly liable for the payment

   of compensation which are received by an employe *shall also be credited* against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c). The employe shall provide the insurer with proper authorization to secure the amount which the employe is receiving under the Social Security Act.

   77 P.S. § 71(a) (emphasis added).

3. 34 Pa.Code § 123.4(f) more fully provides:

   When Federal, State or local taxes are paid with respect to amounts an employee receives in unemployment compensation, Social Security (old age), severance or pension benefits, the insurer shall repay the employee for amounts previously offset, and paid in taxes, from workers compensation benefits, when the offset was calculated on the pretax amount of the benefit received. To request repayment for amounts previously offset and paid in taxes, the employee shall notify the insurer in writing of the amounts paid in taxes previously included in the offset.

This provision establishes that employers have discretion to calculate the offset on the gross, or pretax, amount owed to a claimant, at least initially. This is logical because every claimant will have a different tax liability and, indeed, an individual's ultimate income tax liability is never known with certainty until April 15th of the year following the receipt of income from all sources. If the employer uses the gross amount of the offset to calculate compensation, and the claimant has a tax owed on his unemployment, social security or pension, then the claimant may request the difference from the employer under 34 Pa.Code § 123.4(f). In this way, neither the employer nor the claimant realizes a windfall.

Further, this reading is consistent with *Steinmetz v. Workers' Compensation Appeal Board (Cooper Power Systems)*, 858 A.2d 182 (Pa.Cmwlth.2004), and *Ferrero v. Workers' Compensation Appeal Board (CH & D Enterprises)*, 706 A.2d 1278 (Pa. Cmwlth.1998), in which we allowed offsets for severance payments and unemployment compensation benefits, respectively, to be calculated by using the gross amounts owed to the claimant. 34 Pa. Code § 123.4 allows for a single rule in all offset cases, regardless of the source of the benefit to be offset. This procedure also addresses the Court's concerns about administrative difficulties of trying to anticipate a claimant's tax liability when calculating his disability compensation.

The provision at 34 Pa.Code § 123.4(f), establishes the mechanics by which offsets should be used. Where the employer uses the gross, or pretax, amount paid to a claimant to calculate the compensation offset, the claimant may request additional compensation as reimbursement of the tax paid by the claimant on the benefits used in the offset calculation.

President Judge LEADBETTER and Judge COHN JUBELIRER join in this concurring opinion.